[Cite as *In re D.F.*, 2014-Ohio-4155.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| D.F. DOB 1/30/00 | ) | |
| | ) | CASE NOS. 14 CO 15 |
| B.F. DOB 9/3/97 | ) | 14 CO 16 |
| | ) | 14 CO 17 |
| E.F. DOB 7/26/04 | ) | |
| | ) | OPINION |
| | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Court of Common Pleas, Juvenile Division of Columbiana County, Ohio
Case No. J2011-0156-4, J2011-0155-4, J2011-0157-4

JUDGMENT:     Affirmed

APPEARANCES:
For Appellee

Robert Herron
Prosecutor
Allyson Lehere
Assistant Prosecutor
260 W. Lincoln Way
Lisbon, Ohio 44432

For Appellant

Attorney Judith M. Kowalski
333 Babbitt Road
Suite 323
Euclid, Ohio 44123

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: September 18, 2014

DONOFRIO, J.

{¶1} Appellant, Missie F., appeals from a Columbiana County Common Pleas Court judgment granting permanent custody of her three children to appellee, the Columbiana County Department of Job and Family Services.

{¶2} The family at issue in this case first became involved in the courts in 2010, when Missie F. and Richard F. were convicted of contributing to the delinquency of their three children, B.F. (d.o.b. 9/3/97), D.F. (d.o.b. 1/30/00) and E.F. (d.o.b. 7/26/04), for failing to send them to school. The parents were placed on probation with the condition that they send their children to school. They failed to do so. This failure to send their children to school resulted in the court revoking their probations and imposing 90-day jail sentences on both of them. Because their parents were in jail, the children were adjudicated neglected and placed in foster care in the summer of 2011. The trial court granted temporary custody of the children to appellee.

{¶3} A case plan was put into effect with the goal of reunifying the children with their parents and a guardian ad litem was appointed (GAL) for the children. The case plan required the parents to provide appellee with proof of income suitable to maintain housing for themselves and their children, maintain a home that was clean and free of safety hazards, demonstrate homemaking and budgeting skills, and cooperate with home inspections. Additionally, because both parents suffered from heroin and alcohol abuse, the case plan required them to complete drug and alcohol assessments and counseling. They were also required to submit to random drug screens, refrain from using drugs or alcohol, and refrain associating with known drug users or dealers.

{¶4} Several review hearings were held over the next years where the court found that returning the children to their parents would not be in the children's best interests. Consequently, temporary custody with appellee continued.

{¶5} On April 9, 2013, appellee filed motions for permanent custody of the children. The motions alleged Missie and Richard had not completed their case plans, had been uncooperative with appellee, and had drug issues.

{¶6} The court called the matter for a hearing on September 10, 2013. At

the hearing, Missie and Richard informed the court that they had both recently been indicted on felony charges and were uncertain as to whether they would be available to parent the children. Because the court found the outcome of the parents' criminal proceedings would have a significant effect on the permanent custody proceedings, it continued the permanent custody hearing.

{¶7} Shortly thereafter, the trial court sentenced both parents to 60 days in jail on contempt charges for failure to pay child support and for failure to appear in court.

{¶8} The matter proceeded to a merit hearing on January 27, 2014. The court heard testimony from the GAL, two caseworkers from appellee, and both parents. The GAL and the caseworkers recommended that permanent custody to appellee was in the children's best interest. The parents testified that they wanted the children returned to them.

{¶9} The trial court found that both parents had failed to consistently comply with the requirements or to achieve the goals of the case plan despite having been provided more than an adequate opportunity to do so. The court noted the parents' numerous drug convictions during the pendency of the case and the numerous occasions they refused to submit to drug tests. It also found that all three children had made significant academic gains and achieved emotional stability during their time in foster care. The court found it was in the children's best interests that it grant their permanent custody to appellee. Therefore, the court granted appellee's motions for permanent custody and terminated the rights of both parents.

{¶10} Appellant filed timely notices of appeal on March 14, 2014. This court consolidated the three cases for purposes of appeal. Richard did not appeal.

{¶11} A parent's right to raise his or her children is an essential and basic civil right. *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), citing *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972). However, this right is not absolute. *In re Sims*, 7th Dist. No. 02-JE-2, 2002-Ohio-3458, ¶23. In order to protect a child's welfare, the state may terminate parents' rights as a last resort. *Id.*

{¶12} We review a trial court's decision terminating parental rights and

responsibilities for an abuse of discretion. *Sims*, 7th Dist. No. 02-JE-2, ¶36. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶13} Appellant raises five assignments of error, the first of which states:

THE JUVENILE COURT ERRED TO THE PREJUDICE OF APPELLANT AND DID NOT ACT IN FURTHERANCE OF THE BEST INTERESTS OF THE CHILDREN, BY FAILING TO APPOINT AN ATTORNEY TO REPRESENT THE CHILDREN'S LEGAL INTEREST.

{¶14} Appellant first argues that the court should have appointed counsel to represent the children. She contends the children's wishes were unclear and conflicted with the GAL's recommendation of permanent custody to appellee. Therefore, she asserts the trial court erred in failing to appoint counsel to advocate for the children's interests.

{¶15} R.C. 2151.352 provides that a child is entitled to legal representation at all stages of juvenile proceedings. And Juv.R. 4(A) provides:

Every party shall have the right to be represented by counsel and every child, parent, custodian, or other person in loco parentis the right to appointed counsel if indigent. These rights shall arise when a person becomes a party to a juvenile court proceeding. * * * This rule shall not be construed to provide for a right to appointed counsel in cases in which that right is not otherwise provided for by constitution or statute.

{¶16} The Juvenile Rules define "party" as including "a child who is the subject of a juvenile court proceeding." Juv.R. 2(Y).

{¶17} The Ohio Supreme Court has interpreted this statute and these Rules to mean that "a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding and, therefore, is entitled to independent counsel *in certain circumstances*." (Emphasis added.) *In re Williams*, 101 Ohio St.3d

398, 2004-Ohio-1500, 805 N.E.2d 1110, syllabus. In *Williams*, the child at issue repeatedly expressed his desire to remain with his mother. The guardian ad litem, however, recommended that the court grant permanent custody to the agency. Thus, the child's interests were not represented by the guardian ad litem or his parents and he was, therefore, unrepresented in the proceedings. The Court found that trial courts must determine on a case-by-case basis whether the child actually needs independent counsel, taking into consideration the child's maturity and the possibility that the guardian ad litem would be appointed to represent the child. *Williams*, 101 Ohio St.3d at ¶17.

{¶18} The case at bar is factually distinguishable from *Williams* on one crucial fact. The children in this case never expressed a desire to remain with appellant. The GAL spoke with the children consistently over a two-year period. (Tr. 10). Each of the children expressed their wishes and opinions to the GAL.

{¶19} B.F., who was 16 years old at the time of the hearing, expressed to the GAL that she just wanted to "age out" of the system, meaning she wanted to turn 18 and be done. (Tr. 11). B.F. also told the GAL that she did not care what happened regarding permanent custody. (Tr. 11). D.F., who was just shy of his 14th birthday, expressed that he wanted to stay in Carrollton (where his foster family resides). (Tr. 12). He told the GAL he would like appellee to have permanent custody of him so that he could continue with the life he has in Carrollton. (Tr. 12). As to E.F., who was nine years old at the time, the GAL stated that he was very young. (Tr. 12). She testified she was unsure whether E.F. fully understood what the proceedings meant. (Tr. 13). She stated E.F. was very surprised that appellee wanted custody of him and seemed excited about it. (Tr. 12).

{¶20} In the appellate court case involving the *Williams* children, the Eleventh District noted that a juvenile court need only consider a child's wishes regarding a motion for permanent custody after giving due regard to the child's maturity pursuant to R.C. 2151.414(D)(2). *In re Williams*, 11th Dist. Nos. 2002-G-2454 and 2002-G-2459, 2002-Ohio-6588, ¶24. The court went on to state, "there is no need to consider the appointment of counsel based upon a child's occasional expression of a

wish to be with a parent or because of a statement made by an immature child." *Id.*

**{¶21}** In the case at bar, none of the children expressed a desire to return to their parents' care. B.F. did not care who had custody of her. D.F. wanted to stay in Carrollton with his foster family. And E.F. may not have had the maturity or understanding to express his desire. Thus, there was no conflict between the children's wishes and the GAL's recommendation. Therefore, the trial court did not err in failing to appoint counsel for the children.

**{¶22}** Accordingly, appellant's first assignment of error is without merit.

**{¶23}** Appellant's second assignment of error states:

THE APPELLANT WAS DEPRIVED OF DUE PROCESS AND A FAIR TRIAL BY REASON OF THE GUARDIAN AD LITEM'S FAILURE TO ASCERTAIN THE CHILDREN'S WISHES AND NOTIFY THE COURT OF A CONFLICT BETWEEN THE CHILDREN'S WISHES AND HER RECOMMENDATION.

**{¶24}** Appellant asserts the GAL, who is not an attorney, was still required to ascertain the children's wishes. She claims the GAL failed to delve deeply enough to determine what the children really wanted in this case. She argues the GAL did not fully explore whether the children wanted to return to their parents' care.

**{¶25}** As discussed in appellant's first assignment of error, the GAL had frequent contact with the children for over two years. She discussed their wishes with each of them. B.F. conveyed to her that she wanted to "age out" of the system. B.F. told the GAL that she did not care what happened. D.F. expressed to the GAL that he was happy with his life in Carrollton (where he resided with his foster parents and E.F.). D.F. told the GAL that he wanted appellee to have permanent custody of him so he could continue with his life in Carrollton. And while the GAL opined that E.F. was still young and may not have completely understood the proceedings, E.F. was surprised and excited about the fact that appellee wanted custody of him.

**{¶26}** Contrary to appellant's assertion, the GAL did discuss the children's wishes with each of them. She then conveyed their wishes to the court. Moreover,

none of the children's wishes regarding custody conflicted with the GAL's recommendation of permanent custody to appellee. B.F. was indifferent. D.F. agreed with the GAL's recommendation. And E.F. seemed excited that appellee wanted permanent custody of him. None of the children expressed a desire to return to their parents' care. Thus, we cannot conclude that the GAL failed in her duties.

{¶27} Accordingly, appellant's second assignment of error is without merit.

{¶28} Appellant's third assignment of error states:

THE JUVENILE COURT ABUSED ITS DISCRETION IN DETERMINING THAT CLEAR AND CONVINCING EVIDENCE SUPPORTED ITS DECISION TO AWARD PERMANENT CUSTODY TO THE COLUMBIANA COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES; FURTHER, THE AWARD OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶29} In this assignment of error, appellant argues that the trial court's judgment was not supported by clear and convincing evidence and was against the manifest weight of the evidence. She contends the evidence in favor of permanent custody was minimal and conflicting.

{¶30} The trial court may grant permanent custody of a child to the agency if the court determines by clear and convincing evidence that it is in the child's best interest to grant permanent custody to the agency and that the child has been in the temporary custody of one or more public children's services agencies for 12 or more months of a consecutive 22–month period. R.C. 2151.414(B)(1)(d). Clear and convincing evidence is evidence that produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985).

{¶31} In determining whether it is in the child's best interest to grant custody to the agency, the court shall consider:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, * * * with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1).

{¶32} In this case, the trial court found that both parents have failed to consistently comply with or achieve the goals of the case plan despite having been provided more than an adequate opportunity to do so. It noted the parents have continued to be involved with drugs and, during the pendency of this case, appellant was found to be in possession of drug paraphernalia in a known drug house, both parents were found to be in possession of scales and drugs at a local hotel frequented by drug users, both parents refused to submit to drug tests on multiple occasions, appellant pleaded guilty to felony possession of drugs and was sentenced to six months at Eastern Ohio Correctional Center, and Richard was convicted of felony possession of drugs and sentenced to one year in prison.

{¶33} The court stated it was clear that the parents have been addicted to heroin on and off since 2010. It found that the drug abuse precipitated the initial involvement of the courts due to their children's truancy and has continued through the life of this case. The court noted that the parents have a sincere love and

concern for their children but their addictions have kept them from being able to provide appropriate care, support, housing, or supervision. The court quoted appellant's comment that she wanted to be with her children "as soon as I get my head out of my own butt."

**{¶34}** The court found, based on the duration of appellant's and Richard's neglect of the children's needs and their drug dependency that it was unlikely that either would be a reliable and responsible parent for the children within a year's time. It further found that the children had substantial needs for stability and permanency and that the only way to provide these things was by granting the motions for permanent custody.

**{¶35}** The court noted the children's wishes concerning custody. It also noted that each of the children has been in appellee's continuous custody for more than one year.

**{¶36}** Finally, the court found that it was in the children's best interest that it terminate appellant's and Richard's parental rights and place the children in appellee's permanent custody. The court pointed out this was consistent with the opinions of the GAL and the case workers.

**{¶37}** Clear and convincing evidence supports the trial court's judgment.

**{¶38}** In addition to her testimony regarding the children's wishes as set out above, the GAL recommended that the trial court grant permanent custody to appellee. (Tr. 14). She believed permanent custody was in the children's best interest. (Tr. 14).

**{¶39}** Heather Kurena is an "ongoing worker" with appellee. At the time of the hearing, she had been involved with this case for several months. (Tr. 28). Kurena stated she had met with the children and the parents and monitored their progress. (Tr. 29).

**{¶40}** Kurena stated that B.F. had recently run away from her foster home and was having sex "with random guys." (Tr. 30). B.F. was missing for about a week after which time she turned herself in to the Lisbon Police Department. (Tr. 31). After her return, B.F. was placed in a new foster home where she reported that she

was doing well. (Tr. 32). Kurena testified that B.F. was not placed with her brothers because there were problems with her getting along with them. (Tr. 34). However, she did state that appellee facilitates visitation between B.F. and her brothers. (Tr. 34). Kurena also stated that B.F. performed well at school. (Tr. 51).

{¶41} As to D.F. and E.F., Kurena stated that they have been together in the same foster home for over a year. (Tr. 35). She stated that both of the boys enjoy their foster home. (Tr. 35). They are both involved in extracurricular activities and are doing well in school. (Tr. 35). Upon observing the boys in their foster home, Kurena observed that they listen to what they are told to do and seem comfortable there. (Tr. 35). She also noted that the boys appear to be well-bonded with their foster parents. (Tr. 35-36).

{¶42} Kurena also testified about visitation. She stated that the children have supervised visitation with their parents twice a month at McDonald's. (Tr. 36). For the most part, Kurena stated, the parents attend the visits consistently. (Tr. 36). But she noted there was a period of time when the parents were in jail, so they could not visit. (Tr. 36). Kurena testified the parents are very loving toward the children and the children are excited to see their parents. (Tr. 37). She stated the parents buy the children food at the visits, but other than that they do not provided them with clothes, food, or school supplies. (Tr. 38). She noted that the parents have also not bought Christmas gifts or birthday gifts for the children. (Tr. 38). The children told Kurena that their parents had not bought them any gifts since they had been in appellee's custody. (Tr. 38).

{¶43} Next, Kurena discussed the case plan. The case plan provided that the parents were to provide proof of income suitable to maintain housing, provide bills and receipts of living expenses, make sure the house is clean and free of hazards, participate in the Homemaker Program, make sure pet urine and feces is immediately cleaned up, allow the caseworker in the home upon request, and sign releases of information. (Tr. 39). Kurena noted that just days before the hearing, the parents' house in Lisbon was destroyed by a fire. (Tr. 39). She stated that the father was in jail but appellant had not contacted her to report where she was living or where she

would live with the children if they were returned to her. (Tr. 40).

**{¶44}** Kurena noted that neither of the parents was working. (Tr. 40). During the life of the case, Kurena stated that appellant has never worked and she did not receive Social Security or other benefits. (Tr. 40). She stated that Richard had indicated that he was doing masonry work but when appellee contacted his alleged employer, it was reported that Richard had not worked there since 2012. (Tr. 41). As to the Homemaker Program, which assists with things like how to keep a clean home and how to budget money, Kurena stated that the Program had attempted to contact the parents 15 times between April 2013 and September 2013 and their attempts were unsuccessful. (Tr. 42). The Program only made five successful attempts. (Tr. 43). Kurena also stated that she scheduled two visits with the parents and both times they were not home. (Tr. 44). She viewed the outside of the home on these occasions and noticed trash, beer cans, and refrigerator parts lying around. (Tr. 45). Kurena stated the parents did provide appellee with the appropriate information so the children could be enrolled in school. (Tr. 50).

**{¶45}** Kurena also stated the parents completed drug and alcohol assessments while they were incarcerated and completed counseling. (Tr. 53). But afterwards, both parents had more issues with drugs. (Tr. 54). She noted that in October 2012, appellant was found with drug paraphernalia during a drug raid. (Tr. 53). In January 2013, both parents were present during a drug raid where heroin, crack, and marijuana were found. (Tr. 54). The parents refused to take random drug tests on four occasions in 2012 and 2013. (Tr. 55). Richard was convicted of third-degree felony possession of drugs in November 2013, and was sentenced to one year in prison. (Tr. 56-57; Exs. 4, 5). Appellant was convicted of fifth-degree felony possession of drugs in January 2014, and third-degree felony possession of drugs in November 2013, and was sentenced to six months at Eastern Ohio Correction Center (EOCC) and four years of community control. (Tr. 58-60; Exs. 6, 7, 8, 9).

**{¶46}** Kurena opined that granting permanent custody to appellee was in the children's best interest because the parents had not complied with the case plan, there were concerns about their drug use, they would both be incarcerated for a

period of time, and the children had already been in appellee's custody for two and a half years. (Tr. 61).

**{¶47}** Erin Stauffer, a supervisor with appellee, testified next. Stauffer has supervised this case from its inception. (Tr. 85). She stated that the children first came to appellee's attention in 2011, when both parents were required to serve 90-day jail sentences on their convictions for contributing to the delinquency of a minor. (Tr. 85-90). Their convictions were based on their failure to send their children to school. (Tr. 85-90). At that time, appellee also found issues with the parents involving drugs and alcohol and home conditions. (Tr. 91). Stauffer testified it was in the children's best interest that the court grant permanent custody to appellee because the parents continue to have issue with drugs, they no longer have a home, they are both serving lengthy terms of incarceration, and the children need permanency. (Tr. 93).

**{¶48}** Appellant also testified. She stated that because of the fire, she no longer had a place to live. (Tr. 100-101). She stated that in two weeks, she had to report to EOCC to serve a six-month term. (Tr. 101). However, appellant was hopeful she would complete her program in a shorter amount of time. (Tr. 101). She had no plans as to where she would live after that. (Tr. 104). She stated that when she was incarcerated in 2013, she underwent drug and alcohol counseling. (Tr. 102).

**{¶49}** Appellant opined it was in the children's best interest to be returned to her "as soon um I got my head out of my own butt I guess." (Tr. 106). When asked what she meant by that, appellant stated that she needed to take some time to make herself better before she could help her family. (Tr. 106). When the court asked her if she was ready to have her children back, appellant stated that it would be hard and she was hoping to do her time at EOCC and work through some things first. (Tr. 110). She admitted to the court that she had been using heroin for two years. (Tr. 113).

**{¶50}** Finally, Richard testified. He opined it was in the children's best interest to be returned to appellant and him. (Tr. 119). He stated that while he was in prison,

he planned to take advantage of any programs offered. (Tr. 120).

{¶51} This evidence supports the trial court's grant of permanent custody.

{¶52} First, the testimony indicated that the children have been in appellee's temporary custody since June 2011. Thus, they have been in appellee's custody for 12 or more months of a consecutive 22–month period as is required by R.C. 2151.414(B)(1)(d).

{¶53} Second, the best interest factors support a grant of permanent custody.

{¶54} As to the interaction and interrelationship of the children with their parents, siblings, and foster caregivers (R.C. 2151.414(D)(1)(a)), the testimony indicated that the parents are loving toward the children and the children are excited to see their parents. D.F. and E.F. live in the same foster home and are well-bonded with their foster parents. B.F. had some difficulty in her previous foster home but now seems to be adjusting to her new foster home.

{¶55} As to the wishes of the children (R.C. 2151.414(D)(1)(b)), B.F., who is 16, expressed her desire to "age out" of the system and did not care who had custody of her. D.F., who is 14, indicated that he wanted to continue to reside in Carrollton with his foster parents and E.F. E.F., who is nine, did not indicate a desire either way. However, he was surprised and excited about the fact that appellee wanted permanent custody of him.

{¶56} As to the children's custodial history, (R.C. 2151.414(D)(1)(c)), at the time of the hearing the children had been in appellee's temporary custody for approximately 32 consecutive months.

{¶57} As to the children's need for a legally secure permanent placement and whether that type of placement could be achieved without a grant of permanent custody to appellee (R.C. 2151.414(D)(1)(d)), the evidence demonstrated that in over two and a half years, the parents were unable to provide a stable, secure home for the children. Initially, the parents did not send their children to school on a regular basis. And they both suffer from drug addictions. In two and a half years, the parents were not able to get themselves clean, stay out of jail, gain employment, or keep up their house. Currently, appellant is near the end of her six-month EOCC

term but will remain on probation for another three and a half years and Richard is half way through his one-year prison term. By appellant's own admissions, it would be difficult for her to have the children returned to her at this time. Additionally, appellant did not know where she would live after she completed her time at EOCC. Thus, the children could not achieve the secure, permanent placement they need without granting custody to appellee.

**{¶58}** Finally, there was no indication that any of the R.C. 2151.414(E)(7) to (11) factors applied in relation to the parents and the children in this case (R.C. 2151.414(D)(1)(e)).

**{¶59}** These factors support the trial court's judgment. As the trial court found, the parents seem to love their children, however, the evidence indicates that they cannot provide a stable, secure home for them anytime in the near future. The parents were given over two years to get clean and sober, gain employment, and maintain a clean home and they were not able to do so. As of the date of the hearing, both parents were unable to care for the children due to incarceration. Moreover, D.F. and E.F. are well-bonded to their foster parents in Carrollton, are performing well in school, and are involved in extracurricular activities. D.F. is happy with his life in Carrollton and wants to continue with it and E.F. was excited that appellee wanted permanent custody of him. And while B.F. has had some problems in foster care, she is now with a new family and seems to be doing well. Additionally, she simply wants to "age out" of the system in two years' time. Moreover, the GAL and both caseworkers all agreed that granting permanent custody to appellee was in the children's best interest. Based on the above, the trial court's judgment is supported by competent, credible evidence.

**{¶60}** Accordingly, appellant's third assignment of error is without merit.

**{¶61}** Appellant's fourth assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THE AWARD OF PERMANENT CUSTODY WAS IN THE BEST INTERESTS OF THE CHILD.

**{¶62}** Appellant contends here that appellee did not prove that permanent custody was in the children's best interests.

**{¶63}** As detailed in appellant's third assignment of error, the trial court's finding that permanent custody was in the children's best interest is supported by clear and convincing evidence. The trial court considered the best interest factors, along with other relevant factors, and reached the same conclusion as the GAL and the caseworkers that permanent custody to appellee was in the children's best interests.

**{¶64}** Accordingly, appellant's fourth assignment of error is without merit.

**{¶65}** Appellant's fifth assignment of error states:

WHEN THE TRIAL COURT IS REQUIRED TO MAKE A DETERMINATION THAT A PUBLIC SERVICE AGENCY MADE REASONABLE EFFORTS TO REUNIFY CHILDREN WITH THEIR FAMILY, THE TRIAL COURT ERRED BY RULING IN FAVOR OF PERMANENT CUSTODY WHEN THE RECORD SHOWS A FAILURE TO PROVIDE DILIGENT CASE PLANNING.

**{¶66}** Appellant argues appellee failed to provide adequate case planning in this case. She points out the caseworker sent a letter to her home address when she knew appellant was in jail, the caseworker did not contact her in jail, the caseworker stated that she did not complete any drug screens, and the caseworker was not aware that appellant had resumed counseling in jail.

**{¶67}** As set out above, the case plan provided the parents to provide proof of income suitable to maintain housing, provide bills and receipts of living expenses, make sure the house was clean and free of hazards, participate in the Homemaker Program, make sure pet urine and feces was immediately cleaned up, allow the caseworker in the home upon request, and sign releases of information. (Tr. 39). It also required that the parents submit to random drug testing, that they complete drug and alcohol assessments, and that they not associate with known drug users or dealers (Tr. 47, 52-53). Thus, the case plan gave the parents specific goals and

requirements. Appellee even set the parents up with the Homemaker Program, which was to assist them in getting their house and bills in order. But the parents were unable to comply with many of the case plan requirements even though they were given over two and a half years to do so. This appears to have been due to their drug problems. The court reviewed this case numerous times over two and half years before granting permanent custody to appellee. Thus, appellant had many chances to follow the case plan.

**{¶68}** Accordingly, appellant's fifth assignment of error is without merit.

**{¶69}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Vukovich, J., concurs.

DeGenaro, P.J., concurs.